THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DANIEL SPURBECK, Defendant-Appellant.

(No. 74-182;

Third District—September 19, 1975.

68

James Geis and Mark Burkhalter, both of State Appellate Defender's Office, of Ottawa, for appellant.

Donald C. Woolsey, State's Attorney, of Galesburg (F. Stewart Merdian, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

Defendant, Daniel Spurbeck, was sentenced to an indeterminate term of not less than 1 nor more than 6 years in the State penitentiary following his conviction on a plea of guilty entered February 13, 1974, to an information charging him with unlawful possession of less than 200 grams of a substance containing a controlled drug, a derivative of barbituric acid, in violation of section 402(b) of the Illinois Controlled Substances Act (Ill. Rev. Stat. ch. 56½, § 1402(b)). He appeals here, claiming that the circuit court erred in accepting his waiver of indictment without complying with requirements of Supreme Court Rule 401(b)(3) (Ill. Rev. Stat., ch. 110A, § 401(b)(3)); that it erred in accepting his guilty plea without complying substantially with the requirements of Supreme Court Rule 402 (Ill. Rev. Stat., ch. 110A, § 402); that it erred in failing to advise him that the sentence imposed included a mandatory parole term under provisions of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, § 1001—1—1 et seq.); and finally, that the statute defining the crime of which he was convicted (i.e., Ill. Rev. Stat., ch. 56½, § 1402(b)) is unconstitutional because it provides that the weight of the substance

containing the controlled drug, rather than the weight of the drug itself, is determinative of the penalties.

Defendant was arrested on January 22, 1974, and appeared before the court, pro se, on January 31, 1974. He was 22 years of age at the time and disclosed to the court that he had a net worth of about $3000 and was not indigent. In spite of repeated efforts by the court to persuade him to seek assistance of counsel and of the importance of counsel, and despite admissions by defendant that his parents had also advised him to do so, and notwithstanding continuances ordered by the court to give him opportunity to change his mind, defendant persisted that he did not want to sell any of his property and that he wished to proceed pro se. It is not contended that his waiver of counsel was involuntary, and it is apparent from the record, that before permitting him to do so, the circuit court substantially complied in a manner applicable at the time with all the requirements of Supreme Court Rule 401(a) (Ill. Rev. Stat., ch. 110A, § 401(a)).

■■ Defendant's argument that the circuit court, in accepting his waiver of indictment, failed to comply substantially with the requirements of Supreme Court Rule 401(b)(3) is addressed specifically to the issue of whether the court's failure to explain "that the grand jury arrives at its determination through a finding of probable cause" made such explanation of rights as was given, so meaningless as to deprive defendant of the right to make an intelligent evaluation and choice. We find no merit in this argument. Defendant was informed by the court of the nature of the charge. In the manner applicable at the time, he was admonished as to the minimum and maximum penalties prescribed by law if he should be found guilty; he was told that unless he should waive the requirement, he had a right under rule 401(b)(3) to require that the State's attorney present his evidence to a grand jury for it to decide whether defendant "should be brought into court." The court also told defendant that a grand jury is composed of 23 persons selected from laymen in the county and that it takes 16 to make a quorum, and repeatedly recommended to defendant that he retain counsel before deciding whether to forego this right. Defendant indicated that he did not wish to retain counsel; that he knew the charges made against him and correctly repeated them to the court; and that he wished to "waive" grand jury proceedings. When the court questioned him as to what he meant by indicating a desire to "waive" such right, defendant accurately responded that "to waive" the right, meant "to give it up." Upon further assurances to the court that no promises or threats had been made to him for such waiver, and that his decision was voluntary, the waiver was accepted. Where as here,

the "impaired" understanding which is said to taint the waiver of indictment is alleged to derive solely from the court's failure to comply substantially with the admonition requirements of Supreme Court Rule 401 (b)(3), and the record demonstrates a full and literal compliance with such rule, it must be held that the waiver was executed with sufficient understanding within the meaning of the law. The facts in *People v. Schyska*, 14 Ill.App.3d 557, 302 N.E.2d 666 (3d Dist. 1973), and in *People v. Casley*, 20 Ill.App.3d 1001, 313 N.E.2d 477 (3d Dist. 1974), and in *People v. Culbert*, 69 Ill.App.2d 162, 215 N.E.2d 470 (2d Dist. 1966), upon which defendant relies, vary considerably from those demonstrated by the record here. In *Schyska*, defendant complained that the court, prior to accepting his waiver of indictment, had failed to inform him as to the maximum and minimum sentences as required by Rule 401(b)(2); in *Casley*, defendant had not been informed also of the nature of the charge; in *Culbert*, defendant was not informed of the crime with which he was charged until after the waiver of indictment was taken, and although he was entitled to court appointed counsel, none was appointed until after the purported waiver was taken. In the case at bar, the admonition by the court complied fully with Rule 401(b)(3). *People v. Winder*, 7 Ill.App.3d 571, 288 N.E.2d 67 (4th Dist. 1972).

Defendant claims that the circuit court failed to comply substantially with the requirements of Supreme Court Rule 402(a) before accepting his plea of guilty. That rule requires admonition by the court to the defendant before acceptance of a guilty plea as to (1) the nature of the charge; (2) the minimum and maximum sentence imposed by law; (3) that he has the right to plead not guilty or to plead guilty, and (4) if he pleads guilty, there will not be a trial of any kind, no jury, and that he will thereby waive the right to confront witnesses.

As indicated previously, there were numerous discussions between defendant and the court, prior to acceptance of the negotiated plea, in which the court fully described the charge, and in which defendant himself also correctly described his understanding of it to the court. Moreover, before accepting the plea, and in inquiring as to its voluntariness and the factual background the State's attorney described what the State's evidence would be and defendant supplemented this explanation with some variation by representing to the court that on the day in question he had in his *personal possession* in Knox County some barbituric acid or a substance that had barbituric acid in it, without a prescription and without any business having it, knowing at the time that it was unlawful for him to have it. The court inquired of defendant whether he was just saying this to get the matter over with and defendant answered "no." The court invited defendant to ask questions so he would not feel

anyone had taken advantage of him, advised defendant again of his right to change his mind about the plea, to get a lawyer, and "to back off," that there were many big law books and words that the court could not explain in a short time, and that the court wanted to be "very, very certain" nobody has "overreached, or threatened, or promised, or fooled or misled" defendant, and defendant represented that no one had, and persisted in his plea.

■■ It is argued now that the court's failure to have advised defendant as to the "legal connotations" of the word "possession" contained in some of the cases, as meaning "immediate and exclusive control," demonstrates a lack of substantial compliance with the provisions of Rule 402(a)(1) requiring an admonition as to the nature of the charge, and that had defendant been aware of these connotations he may not have persisted in his plea of guilty. We reject this contention. In asking the court to accept his plea, defendant represented that he had the illegal substance in his personal possession without a prescription, and it is plain that the court fully discharged its judicial responsibility to defendant in respect to its admonishment as to the nature of the charge, and that defendant fully understood the meaning of the charge.

It is also clear form the record that defendant was advised, as required by Rule 402(a)(3). of his right to plead not guilty, and was told even that he might withdraw his guilty plea should he retain counsel and be so advised. and that he could "go to bat" on the charge. It seems apparent that defendant fully understood all of this also. Although the record does not indicate that the court informed defendant of his privilege against self-incrimination, or in specific words, that a jury trial would accord him the right to confront witnesses, this court has previously held in *People v. Peterson,* 16 Ill.App.3d 1025, 307 N.E 2d 405 (3rd Dist. 1974), that such specific *incantations* are not required by law where the record shows substantial compliance with Rule 402, and that defendant's plea was voluntary and that he understood and contemplated the consequence that a certain sentence might follow upon acceptance of his plea of guilty.

■■ At the time these admonitions were given by the circuit court it was the prevailing rule as set forth in *People v. Krantz,* 58 Ill.2d 187, 317 N.E.2d 559 (1974), that substantial compliance with Rule 402(a)(2), governing standards for acceptance of guilty pleas, *did not require* that the accused be admonished as to the mandatory parole term imposed under the provisions of the Unified Code of Corrections (Ill. Rev. Stat., ch. 38, § 1001—1—1 *et seq.*). Accordingly, *in its admonition to the defendant here under Rule 402(a)(2) in respect to the minimum and maximum sentences prescribed by law for the offense charged, the circuit court did not admonish defendant as to the mandatory 3-year parole*

term imposed as an additional sentence following the term of imprisonment under provisions of the Unified Code of Corrections. Under the rule of *Krantz*, applicable at the time defendant's plea was taken, the court's admonition substantially complied with Rule 402(a)(2). Subsequent to oral arguments on this appeal, however, the supreme court in a decision filed May 19, 1975, entitled *People v. Wills*, 61 Ill.2d 105, 330 N.E.2d 505, as modified by supplemental opinion filed June 30, 1975, stated that it had reconsidered the position taken in *Krantz*, and now held that compliance with Rule 402(a)(2) requires in respect only to pleas taken after May 19, 1975, that a defendant be admonished that the mandatory period of parole pertaining to the offense is part of the sentence that will be imposed and that he can be held subject to the jurisdiction of the Parole Board for a period of time equal to the maximum term of imprisonment provided in the indeterminate sentence and the parole term. The mandatory parole provisions of the Unified Code of Corrections are to be deemed a part of the sentencing adjudication. We are persuaded, therefore, that at the time defendant's plea was taken here on February 13, 1974, the court's admonition was fully adequate and in substantial compliance with all applicable rules.

■■ Defendant's last assignment of error is that the statute defining the crime of which he was convicted is unconstitutional because it provides that the weight of the substance containing the controlled drug, rather than the weight of the drug itself, is determinative of the penalty. Our decision in *People v. Golden*, 18 Ill.App.3d 633, 310 N.E.2d 172 (3d Dist. 1974), and the cases therein cited, including *People v. Peterson*, are dispositive of this precise issue.

The judgment of the Circuit Court of Knox County is affirmed.

STOUDER and ALLOY, JJ., concur.